UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CRIMINAL NO. 05-43-DCR

UNITED STATES OF AMERICA                               PLAINTIFF


VS:                    **REPORT AND RECOMMENDATION**


GRANT MATLOCK                                      DEFENDANT

\* \* \* \* \* \* \* \*

This matter is pending before the Court upon the defendant's motion to
suppress (DE #9) the results of a search of his mobile home residence located near
Williamsburg, Kentucky, on August 23, 2003.  The government filed a response
(DE #13) on July 12, 2005, and the defendant waived the filing of a reply.  Counsel
stipulated that only questions of law are presented and, therefore, no evidentiary
hearing was required.  Considering the entire record and being advised, the
Magistrate Judge makes the following proposed Findings of Fact and Conclusions
of Law:

**FINDINGS OF FACT**

1) On August 23, 2003, several complaints of counterfeit currency were
called into the Kentucky State Police (KSP) Post in Dry Ridge, Kentucky.  A

Page -1-

vehicle description was transmitted to KSP Trooper Miller.  The vehicle was

stopped 5-6 miles north of Dry Ridge, Kentucky on Interstate 75.  Located in the

vehicle was Latosha Hibbard and Charles Hampton.  Hampton was driving and

Hibbard a passenger in the front seat.  Two twenty dollar counterfeit bills were

found in the vehicle's front seat.  Both suspects provided verbal and signed

statements to an investigating Kentucky State Police Trooper at Dry Ridge.  The

vehicle was registered to Grant Matlock, defendant herein.

2) This information was relayed to the KSP Post at London, Kentucky.  KSP

Detective Colan Harrell obtained mileage readings, a physical address, and

physical description of the mobile home of Grant Matlock, located at Wofford,

near Williamsburg, Kentucky.  Detective Harrell drafted and applied for a state

search warrant.  The search warrant was signed by Whitley County District Judge

Cathy E. Prewitt on August 23, 2003.  The relevant part of the affidavit in support

of the search warrant reads as follows:

> "Affiant has been an officer in the aforementioned agency for a
> period of 30+ years and the information and observations contained
> herein were received and made in his capacity as an officer thereof.

> 'On the 23rd day of August, 2003, at approximately 7:00 a.m.,
> affiant received information from Trooper Scott Miller of Kentucky
> State Police, Dry Ridge Post, that on August 23, 2003, Trooper Miller
> stopped a Jeep pickup truck registered to Grant Matlock.  Charles
> Hampton was driving the vehicle and Latosha Hibbard was a

passenger.  The vehicle was stopped approximately nine (9) miles North of Dry Ridge.  Trooper Miller found two (2) counterfeit twenty dollars bills in the possession of Charles Hampton.  When asked where he had obtained the bills, Hampton stated to Trooper Miller that the bills were given to him by Grant Matlock in Williamsburg, and also stated that on Wednesday, August 20, 2003, at approximately 7:00 p.m., that he and Christopher Humphrey had gone to Grant Matlock's residence to receive payment for working at Matlock's restaurant.  At the residence, Charles Hampton observed two tables.  On one table, there was a large copier and next to the copier were several one hundred dollar bills and several twenty dollar bills, cut in half.  The bills were light in color and had been discarded as rejects.  On the other table, he observed a paper cutter, copy paper and an empty ink cartridge pad.  Grant Matlock gave Hampton and Humphrey five (5) twenty dollar bills and asked him to pass the bills for him.  Matlock then printed eight (8) more twenty dollar bills and gave them to Hampton and Humphrey to pass.  On Friday, August 22, 2003, they received more twenty dollar bills from Grant Matlock.  Charles Hampton and Latsoha Hibbard were stopped en route to Kings Island at Dry Ridge Shell, where they attempted to pass a twenty dollar bill.  The bill was recognized as counterfeit by an employee, who called police.

'Acting on the information received, Affiant conducted the following independent investigation: obtained search warrant on Trooper Scott Miller's investigation after verifying residence of Matlock."

3) The search warrant was executed on August 23, 2003, where several items of contraband, counterfeit currency, a Hewlett Packard copier, and a cutting board were located and seized.  The above defendant was arrested on state charges of Criminal Possession of a Forged Instrument First Degree and lodged in the Whitley County Jail.

4) A London Grand Jury returned a four-count indictment on May 26, 2005, charging various counterfeiting related crimes.

## CONCLUSIONS OF LAW

The defendant relies heavily upon _United States v. Allen_, 211 F.3d 970 (6th Cir. 2000)(en banc), especially "the precise holding", at page 976:

> "We hold that where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate _may_ believe that evidence of a crime will be found." (Emphasis by the Court).

He then argues that where reliability of the informant is not attested, substantial police corroboration is required to establish probable cause, citing an unpublished opinion, _United States v. Gaston_, 2001 WL 873744 (6th Cir. (Tenn.)).  That case involved a bare bones conclusory affidavit, which was devoid of any "supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant."

The government counters with the assertion that courts "have consistently held that use of a named informant, as opposed to an anonymous tipster, can supply probable cause, citing _United States v. Calloway_, 116 F.3d 1129 (6th Cir.), _cert. denied_, 522 U.S. 925 (1997) and _United States v. Pelham_, 801 F.2d 875, 878

(6th Cir. 1986).  Of course, both of these cases predated _Allen_ and were not en banc

decisions.

Admittedly, a close issue is presented.  However, the Magistrate Judge does

not interpret the "precise holding" in _Allen_ as holding that all affidavits must either

attest to the reliability of the informer or, alternatively, contain substantial police

corroboration to cure that deficiency.  Nor do Supreme Court and subsequent Sixth

Circuit decisions so hold.

It is elemental that the Fourth Amendment's commands are practical and not

abstract.  Thus, affidavits for search warrants are interpreted by magistrates and

courts in a commonsense and realistic fashion, as opposed to a hypertechnical

analysis.  _United States v. Ventresca_, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13

L.Ed.2d 684 (1965).  Also see _United States v. Greene_, 250 F.3d 471, 479 (6th Cir.

2001).  Moreover, an issuing judge's findings of probable cause should be afforded

great deference unless arbitrarily exercised.  _United States v. Allen_, _supra_, at 973.

"The test for probable cause is simply whether there is a fair probability that

contraband or evidence of a crime will be found in a particular place."  _United_

_States v. Murphy_, 241 F.3d 447, 457 (6th Cir. 2001)(quoting _United States v._

_Shamaeizadeh_, 80 F.3d 1131, 1136 (6th Cir. 1996).  The Supreme Court has

adopted the totality of the circumstances approach to determine whether probable

cause exists.  *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76

L.Ed.2d 527 (1983).  Under that approach, the issuing judge is required to "make a

practical, commonsense decision ... given all the circumstances set forth in the

affidavit ..., including the 'veracity' and 'basis of knowledge' of persons supplying

hearsay information."  *United States v. Murphy*, 241 F.3d at 457 (quoting *Gates*,

462 U.S. at 238, 103 S.Ct. at 2317).  These elements are not separate and

independent requirements.  Rather, "a deficiency in one may be compensated for,

in determining the overall reliability of a tip, by the strong showing as to the other,

*or by some other indicia of reliability*."  *Gates*, 462 U.S. at 233, 103 S.Ct. at 2329

(Emphasis supplied).

   *United States v. Miller*,[1] 314 F.3d 265 (6th Cir. 2002) is controlling in this

case.  There, the affidavit was totally silent as to the credibility of the informant,

the officer did little to corroborate the information (other than, as here, to record

directions and mileage to the place sought to be searched), and the informant's

---

[1]Miller was represented by the same attorney who now represents the defendant in this case.  In that case, the undersigned Magistrate Judge recommended suppression due to the "precise holding" in *Allen*.  Not only does the undersigned, as a "burned child", dread the fire, he is now convinced that the Sixth Circuit's holding in *Miller* is the correct application of the law.

observations were not nearly as detailed as those in the instant case. The Court upheld the search, applying the case law cited above.

*Miller* was followed by the unpublished opinion in *United States v. Tolbert*, 112 Fed. Appx. 440, 2004 Fed. App. 0015N. In that case, an affidavit was found sufficient to establish probable cause which was based on recent observations of an unnamed juvenile (whom the officer apparently had never met before), combined with anonymous telephone calls.

The affidavit in the instant case presents much more detailed observations of the informants than did those in either *Miller* or *Tolbert*. Here, the two sources are both *named in the* affidavit. Both of their statements are against their penal interests (admitting that they attempted to pass counterfeit bills which they received from the defendant), as well as subjecting them to the provisions of KRS 519.040(1)(d), which creates a Class A misdemeanor to knowingly give false information to any law enforcement officer with intent to implicate another. *Cf. United States v. Couch*, 367 F.3d 557, 560-61 (6th Cir. 2004). Also see *United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723 (1971) where the Supreme Court emphasized the credibility that such an admission brings to an informant's statements, noting:

"People do not lightly admit a crime and place critical evidence in the
hands of the police in the form of their own admissions.  Admissions
of crime, like admissions against proprietary interests, carry their own
indicia of credibility – sufficient at least to support a finding of
probable cause to search.  *Harris*, 403 U.S., at 583."

Here, the named informants (especially Charles Hampton) gave a detailed

description of what they observed inside the defendant's residence on two separate

and recent occasions, being three days and one day earlier, as well as admitting to

their criminal activities with the defendant.  The affidavit further reflects that both

informants not only admitted their guilt, but that the arresting officer (also named

in the affidavit) personally found two counterfeit twenty dollar bills in their

possession.  The "basis of knowledge" of each informant is recent, is detailed, and

is against each of their penal interests.  Their statements were reduced to writing by

the arresting officer at Dry Ridge, in northern Kentucky, and transmitted to

Detective Harrell, in Whitley County, who then executed the affidavit in support of

the search warrant.  These factors all weigh in favor of a clear finding of a

sufficient "indicia of reliability" of the informants.  *Gates*, 462 U.S. at 233, 103

S.Ct. at 2329.   As was the case in both *Miller* and *Tolbert*, the affiant's

corroboration consisted basically of verifying the location of the defendant's

residence and preparing a description of same, along with directions and mileage.

The government's response correctly points out that courts have consistently upheld affidavits based upon information supplied by named informants, while holding those based on anonymous tipsters to greater scrutiny.  See, e.g., _United States v. Pelham_, 801 F.2d 875 (6ᵗʰ Cir. 1986) and _United States v. Couch_, 367 F.3d 557, 560-61 (6ᵗʰ Cir.2004).  Moreover, even the _Allen_ case, upon which defendant places primary reliance, addressed this issue, stating:

> "The CI was not anonymous, but personally known to the detective who swore the affidavit, and who revealed the CI's name to the magistrate .... The information alleged was of direct personal observation of criminal activity.  Corroboration is not a necessity in such a case." _Allen_, 211 F.3d at 976.

In _Allen_, the CI's reliability was established over a five-year period during which the informer had given the officer reliable information.  Here, both informants' reliability is established by the detailed information outlining their recent observations made inside the defendant's residence, their personal interaction with the defendant in the criminal activities observed there,  and those later committed elsewhere by the informants, and their consistent statements, both being against their penal interests.  As noted above, this clearly established an "indicia of reliability" conforming to the requirements of _Gates_.

Even if the affidavit were held insufficient to give probable cause to search the defendant's mobile home, the good faith exception set forth in _United States v._

Page -9-

*Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) would apply.  Under

*Leon*, evidence seized in violation of the Fourth Amendment will not be excluded

if the reliance on the magistrate's determination of probable cause by the officers

executing the search warrant was objectively reasonable.  Also see *United States v.*

*Carpenter*, 360 F.3d 591, 594-97 (6th Cir. 2004) (finding that the affidavit

supporting the search warrant did not contain sufficient facts to support the

probable cause determination, but applying the "good faith exception" to the

exclusionary rule), and *United States v. Chaar*, 137 F.3d 359, 364 (6th Cir. 1998).

In the present case, the officers' reliance on the search warrant was both reasonable

and in good faith.  The affidavit was not "bare bones", nor was the warrant facially

deficient.  The affidavit contained sufficient facts for the officers to reasonably

believe that the warrant was properly issued and could be relied upon.

### RECOMMENDATION

It is RECOMMENDED that the motion to suppress (DE #9) be DENIED.

By agreement of the parties, particularized objections to this Report and

Recommendation must be filed within three (3) days of the date of service of the

same or further appeal is waived.  *United States v. Walters,* 638 F.2d 947 (6th Cir.

1981), *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *affirmed*, 474 U.S. 140

(1985).  Poorly drafted objections, general objections or objections that require a

judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal.  See *Howard v. Secretary of Health and Human Services,* 932 F.2d 505 at 509 (6th Cir. 1991).  Also by agreement of th parties, a party may file a response to another party's objection within three (3) days after being served with a copy thereof.  Rule 72(b), Fed.R.Civ.P.

This the 19th day of July, 2005.

Signed By:

*J.B. Johnson, Jr.*

United States Magistrate Judge