UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 05-43-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| GRANT MATLOCK, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of Defendant Grant Matlock's motion to suppress certain evidence obtained from a search of his residence. [Record No. 9] This motion was referred to United States Magistrate Judge J. B. Johnson, Jr., for a report and recommendation. On July 19, 2005, the Magistrate Judge filed his report [Record No. 14], recommending that the Defendant's motion be denied. The Defendant filed objections and the United States filed a notice indicating that it has no objections to the Report and Recommendation. The motion is now ripe for the Court's review.

After reviewing the Report and Recommendation and considering the Defendant's objections, the Court concludes that the Magistrate Judge's recommendation should be adopted. Accordingly, the Defendant's motion to suppress will be denied.

**I.    Relevant Facts**

The facts central to the Defendant's motion to suppress do not appear to be in dispute. On August 23, 2003, the Kentucky State Police ("KSP") received several complaints of

counterfeiting. In connection with those complaints, the KSP was given the description of a vehicle. KSP Trooper Scott Miller stopped a vehicle matching the description about 5-6 miles north of Dry Ridge, Kentucky. The driver of the vehicle was Charles Hampton and the passenger was Latosha Hibbard. Trooper Miller discovered that Hampton was in possession of two twenty dollar counterfeit bills. Hampton indicated that he had obtained the bills from Grant Matlock. Trooper Miller obtained verbal and signed statements from both individuals and discovered that the vehicle was registered to Grant Matlock.

Trooper Miller relayed this information to the KSP Post in London, Kentucky. At that time, KSP Detective Colan Harrell obtained mileage readings, a physical address, and a physical description of Matlock's mobile home, which was located near Williamsburg, Kentucky. In addition, he drafted and applied for a state search warrant. The affidavit provided, in relevant part, that:

> Affiant has been an officer in the aforementioned agency for a period of 30+ years and the information and observations contained herein were received and made in his capacity as an officer thereof.
>
> On the 23rd day of August, 2003, at approximately 7:00 a.m., affiant received information from Trooper Scott Miller of Kentucky State Police, Dry Ridge Post, that on August, 23, 2003, Trooper Miller stopped a Jeep pickup truck registered to Grant Matlock. Charles Hampton was driving the vehicle and Latosha Hibbard was a passenger. The vehicle was stopped approximately nine (9) miles North of Dry Ridge. Trooper Miller found two (2) counterfeit twenty dollar bills in the possession of Charles Hampton. When asked where he had obtained the bills, Hampton stated to Trooper Miller that the bills were given to him by Grant Matlock in Williamsburg, and also stated that on Wednesday, August 20, 2003, at approximately 7:00 p.m., that he and Christopher Humphrey had gone to Grant Matlock's residence to receive payment for working at Matlock's restaurant. At the residence, Charles Hampton observed two tables. On one table, there was a large copier and next to the copier were several one hundred dollar bills and several twenty dollar bills, cut in half. The bills were light in color and had been

discarded as rejects. On the other table, he observed a paper cutter, copy paper and an empty ink cartridge pad. Grant Matlock gave Hampton and Humphrey five (5) twenty dollar bills and asked him to pass the bills for him. Matlock then printed eight (8) more twenty dollar bills and gave them to Hampton and Humphrey to pass. On Friday, August 22, 2003, they received more twenty dollar bills form Grant Matlock. Charles Hampton and Latosha Hibbard were stopped en route to Kings Island at Dry Ridge Shell, where they attempted to pass a twenty dollar bill. The bill was recognized as counterfeit by an employee, who called police.

Acting on the information received, Affiant conducted the following independent investigation: obtained search warrant on Trooper Scott Miller's investigation after verifying residence of Matlock.

The KSP executed the search warrant on August 23, 2003. At that time the officers seized contraband items, counterfeit currency, a Hewlett Packard copier, and a cutting board. Initially, Matlock was arrested on state charges of Criminal Possession of a Forged Instrument First Degree. However, Matlock was indicted on May 26, 2005, by a federal grand jury of various counterfeiting crimes.

## II. The Defendant's Motion to Suppress

In support of his argument that the evidence seized from his residence should be suppressed, Matlock relies on the holding in *United States v. Allen*, 211 F.3d 970 (6th Cir. 2000). There, the court, on rehearing *en banc*, affirmed the district court's order denying a motion to suppress. Specifically, the court held that an affidavit based upon personal observation of criminal activity by a confidential informant who was named to the magistrate and who had provided reliable information to the police in the past about criminal activity, contained probable cause for issuance of a search warrant. The Defendant argues that, in this case, the affiants were

not known to the officer and there was no substantial corroboration of their stories by the police. Thus, he contends that there was not probable cause for the judge to issue the search warrant.

To determine whether probable cause exists to search a particular place, a magistrate must consider whether "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *accord United States v. Murphy*, 241 F.3d 447, 457 (6th Cir. 2001)(quoting *United States v. Shamaeizadeh*, 80 F.3d 1131, 1136 (6th Cir. 1996)). This Court, therefore, must assess whether the state judicial officer had a substantial basis for finding that the affidavit presented to support the warrant established probable cause to believe that the evidence would be found at the place cited. *See United States v. Shields*, 978 F.2d 943, 946 (6th Cir. 1992). In evaluating an issuing magistrate's probable cause determination, the Supreme Court has adopted a flexible "totality of the circumstances" approach, which permits the courts to evaluate the particular facts of each case. *Gates*, 462 U.S. at 238. Sufficient information must be presented to the magistrate to allow that official to determine probable cause. A magistrate cannot merely ratify the bare conclusions of others. *Id*.

This Court agrees with the Magistrate's conclusion that the affidavit contained sufficient probable cause for issuance of the warrant. Although the affidavit is silent as to the credibility and/or reliability of the informants, it is notable that both sources are named in the affidavit. As the United States noted in its response to the motion to suppress, courts have consistently upheld affidavits based upon information supplied by named informants, as opposed to anonymous tipsters. *See United States v. Pelham*, 801 F.2d 875 (6th Cir. 1986); *United States v. Couch*, 367

F.3d 557, 560-61 (6th Cir. 2004). Even in *Allen*, the case upon which the Defendant primarily relies, the court noted that police corroboration was unnecessary because the confidential informant was not anonymous inasmuch as he had given the detective who swore out the affidavit reliable information over a five year period. In addition, similar to the instant case, the detective and the issuing magistrate were aware of the informant's name.

Another factor that supports the veracity and reliability of the affidavit at issue is that the information contained therein was based on Hampton's recent, first-hand observations. That is, the affidavit was based on information provided by Hampton who had been inside Matlock's residence just three days prior to execution of the warrant. Hampton provided a detailed account of the of items he observed at Matlock's residence, including a description of the counterfeit contraband. The affidavit also contained statements made by Matlock and actions taken by him as observed by Hampton.

In *Pelham*, 801 F.2d 875, the court held that "[w]hen a witness has seen evidence in a specific location in the immediate past, and is willing to be named in the affidavit, the 'totality of the circumstances' presents a 'substantial basis' for conducting a search for that evidence." *Id*. at 878. The Defendant suggests that the fact that Trooper Miller knew nothing about Hampton's past affects the reliability of the affidavit. However, as noted in *Tolbert*, the reliability comes from the fact that the police knew the informant's name and could prosecute the individual if they discover that he/she has not been truthful. *See e.g.*, *Tolbert*, 112 Fed. Appx. at 443-44.

The Defendant also alleges that the officers did not sufficiently corroborate Hampton's statements.  However, as the Magistrate Judge correctly notes, Trooper Miller performed the same type of corroboration that the officer in the *Miller* decision performed (*i.e.*, record directions and mileage to the place to be searched).  And, in that case, the Court found probable cause based largely on the fact that the informant provided recent and specific information that he had observed first-hand.  This is precisely the factual circumstance that exists here.

For all these reasons, this Court agrees with the Magistrate Judge's determination that the information contained in the affidavit gave the issuing judge a substantial basis for concluding that a search of Matlock's residence would uncover evidence of wrongdoing.  However, even if the affidavit did not contain probable cause for issuance of the warrant, the Court agrees with the Magistrate Judge that the good faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984) would apply.  Under that exception, evidence seized in violation of the Fourth Amendment will not be excluded if the officer's reliance on the subsequently invalidated search warrant was "objectively reasonable."  *Id*. at 919.  As noted by the Magistrate Judge, the affidavit was not "bare bones."  Rather, it was rich in detail as to time, place, statements and criminal activity.  Therefore, the Court agrees that the affidavit contained sufficient facts for the officers to reasonably believe that the warrant was properly issued.

Having reviewed the record *de novo* in light of the Defendant's objections, 28 U.S.C. § 636(b)(1)(C), and being otherwise sufficiently advised, the Court concurs in the Report and Recommendation of the Magistrate Judge.  [Record No. 14]  Accordingly, it is hereby

**ORDERED** as follows:

1.  The Defendant's Motion to Suppress [Record No. 9] is **DENIED**;

2.  United States Magistrate Judge J.B. Johnson, Jr.'s Report and Recommendation [Record No. 14] is **ADOPTED** and **INCORPORATED** herein by reference; and

3.  The Defendant's objections [Record No. 17] to this report are **OVERRULED**.

This 27th day of July, 2005.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge